SHULTS *v.* SHULTS.

5-1177                                    299 S. W. 2d 57

Opinion delivered February 25, 1957.

*J. Loyd Shouse* and *Arthur N. Wood,* for appellant.

*Arnold M. Adams* and *Garvin Fitton,* for appellee.

ED. F. McFADDIN, Associate Justice. The appellants, as plaintiffs, sought to set aside a conveyance of real and personal property made to appellee. From a decree refusing all the relief they desired, the appellants bring this appeal.

Mr. and Mrs. James W. Shults died intestate some time about 1920, survived by several sons and daughters. Two of the sons were Virgil Shults and Delmer Shults and they were single and unmarried: "they were old bachelors." For a valuable consideration, all the other heirs of Mr. and Mrs. James W. Shults conveyed to Virgil Shults and Delmer Shults the home place of 139 acres here involved. Some of the heirs conveyed

to Virgil and some to Delmer, so that the two brothers did not own equally, but together they owned the entire fee and lived on the land.

In 1950 Virgil Shults died intestate and his interest in the home place descended to his four surviving brothers and the heirs of his two deceased sisters — some thirteen persons in all. After the death of Virgil Shults his heirs, in 1950, conveyed the Virgil Shults interest in the home place and personal property to Delmer Shults, the surviving bachelor brother, who continued to live on the farm. The nature of this conveyance — whether absolute or in trust — is discussed in Topic II, *infra*. Delmer lived on the home place until a few months before his death. On October 22, 1952, Delmer executed a warranty deed conveying to his brother, A. J. Shults, of Phillipsburg, Missouri (appellee here), the entire 139 acres and also all personal property owned by Delmer Shults.

On January 4, 1953, Delmer Shults died intestate; and this suit was subsequently filed by the plaintiffs as the administrator and all the heirs at law of Delmer Shults (except defendant, A. J. Shults) against A. J. Shults, to cancel the said deed and bill of sale of October 22, 1952. Two claims were made by plaintiffs: first, that A. J. Shults exercised undue influence on Delmer Shults to obtain the said conveyances; and, second, that Delmer Shults held the title in trust for all of the heirs of Mr. and Mrs. James W. Shults, the original owners. Trial in the Chancery Court resulted in a decree (a) denying the claim of undue influence; and (b) denying most of the trust claim. Appellants bring this appeal.

I. *The Matter Of Undue Influence.* In August, 1952 it was determined that Delmer Shults was suffering from cancer. At that time, he was living alone on the 139 acre farm. His condition gradually grew worse; and in October, 1952 he got one of his friends to take him to Harrison, Arkansas. There Delmer called by long distance his brother, A. J. Shults, who lived at Phillipsburg, Missouri, and informed him of the malignancy. A. J. Shults came immediately to Delmer's home. Next

day the two went to Harrison where Delmer executed the deed and bill of sale here attacked. Then A. J. Shults took Delmer to Little Rock for examination regarding the malignancy. The doctors' report was that Delmer had only a few months to live. Delmer and A. J. returned to the home place; an auction sale was conducted of the farm equipment and livestock; and Delmer went to Missouri to live with A. J. Shults. Later, Delmer was transferred to a nursing home in Missouri and was visited every day by A. J. Shults until January 4, 1953, the date of death, as aforesaid.

It is admitted by all sides that Delmer Shults was sane at the time he executed the deed in October, 1952; but witnesses for the plaintiffs said that after A. J. Shults arrived on the scene he made all the decisions and Delmer merely acquiesced. Such was the main basis for the claim of undue influence. But there is strong evidence to disprove any undue influence: (1) Delmer sent for his brother, A. J.; (2) the notary public who prepared the deed and took Delmer's acknowledgment testified in favor of the validity of the deed and the conveyance of the personal property; and (3) it was in keeping with previous transactions in the family for title to pass from brother to brother. In short, a careful study of all the evidence fails to convince us that the Chancellor was in error in holding the plaintiffs' evidence insufficient to establish undue influence.

II. *The Matter Of Delmer Shults As A Trustee.* The plaintiffs claimed that when they, or their ancestors, executed the deeds to Delmer Shults in 1950 (conveying the Virgil Shults interest in the land and personal property) it was then agreed by Delmer Shults that he would hold the entire farm and all the personal property thereon as trustee, and that on his death the entire 139 acres and all personal property would go to Delmer Shults' heirs at law. There was an attempt to make proof of such a promise of trust by Delmer Shults as regards the real estate. There was practically no evidence of a trust of any kind as regards the personal property; and the evidence as to the real property, even if admissible,

was entirely too sketchy to substantiate such a broad claim that Delmer Shults agreed to hold his own interest in his own property in trust for his own heirs.

The Trial Court held, however, that certain of the conveyances made to Delmer Shults in 1950 (of the Virgil Shults interest) were based on a trust; that is, Delmer Shults agreed that at his death the interest of such grantors in the real estate would revert to them. The Court held that such evidence was clear, cogent, and convincing; and so decreed a trust regarding the interests that Delmer Shults received from such grantors. The effect of such holding was to give the said grantors (some of the appellants herein) an undivided interest in the 139 acres of land. A. J. Shults has not challenged that part of the decree by cross-appeal, so we leave it undisturbed.

Affirmed.